## REBECCA CALLEN ET AL. *v.* WILLIAM ELLISON.

1. The record of a judgment of the court of common pleas showed that " the defendants, by C., their attorney, came into court, and by virtue of his power of attorney," filed in this court, confessed judgment for the defendants for the sum of," etc. It was sought, in a collateral proceeding, to show that the only power of attorney among the papers in the case, and which was marked with the proper number of the case, did not appear to be signed by some of the defendants, and that such defendants were at the time married women, and

thereby to show that the judgment was rendered without jurisdiction and void. Held: That evidence of such facts could not. be received to impeach the validity and effect of the judgment.

2. The same defendants were the owners of real estate, which was sold under an execution issued against them upon the judgment, and a deed therefor executed by the sheriff. Held: That the effect of the judgment, under the statute, to bind the real estate of the debtors, and to authorize its sale, could not be impeached by proof that they were at the time married women ; their coverture should have been presented as a defense, as an objection to the rendition of the judgment, or as a ground to set it aside.

APPEAL. Reserved in the district court of Adams county.

This was a petition for partition of certain land.

The petitioners, among others, were heirs at law of Andrew Boyd, deceased, to whose heirs a patent issued for the land.

Rebecca Callen claimed one seventh, as patentee under the United States, Robert, Samuel and Eliza McClure, one seventh by descent from Ann McClure, who was one of the original patentees, and Jane Rosen and Andrew Mills, one seventh, by descent from Margaret Mills, also one of the original patentees.

The defendant contested the title of the petitioners.

The following were the facts agreed upon by counsel:

1st.. That the petitioners are heirs at law of Andrew Boyd, deceased, as stated in the petition.

2d. " That Rebecca Callen, Margaret Mills (mother of Andrew Mills and Jane Rosen, two of the petitioners herein), and Ann McClure (mother of Samuel, Robert and Eliza McClure, petitioners herein), were, on the 1st day of June, A. D. 1827, married women, and remained under disability of coverture up to the periods following, to-wit: the said Rebecca Callen up to March, 1856, the said Ann McClure up to August, 1852, and the said Margaret Mills up to 1844.

3d. " That the said Andrew Mills and Jane Rosen, two of the petitioners herein, are the heirs at law of Margaret Mills, deceased, as stated in the petition.

4th. " That the said Samuel McClure, Robert McClure and Eliza McClure, three of the petitioners herein, are the heirs at law of Ann McClure, deceased, as stated in the petition.

5th. " That neither the petitioner, Jane Rosen, nor her

mother, Margaret Mills, deceased, ever resided in the United States, or have been there; and that the said Rebecca Callen never was within the United States until the year A. D. 1847.

6th. "That at the time of taking the judgment (hereinafter mentioned), the issuing of the execution and the sale of the land, the said Charles Callen lived in Manchester, Adams county, Ohio, and continued to live in the county until he died, in 1856; but that the said Rebecca Callen, wife of the said Charles Callen, and one of the petitioners herein, at the time the judgment aforesaid was obtained, and the said execution issued thereon, lived in the kingdom of Ireland, and continued to reside there until the year 1847.

7th. "That McClure and wife, at the time of the rendition of the judgment and sale of the land, lived in Manchester, and continued to live there until their deaths, within one mile of the land in the petition described; and that the defendant has been in the possession of said land ever since the execution of the deed by Wm. Howell to him, on file.

8th. "That in the warrant of attorney, marked (D.) No. 1423, hereto attached, was the only warrant of attorney found among the papers in the case of Benjamin Bowman against Robert Boyd, Samuel Boyd, Esther Moore, Robert Mills, Margaret Mills, Charles Callen, Rebecca Callen, John Boyd, John McClure and Ann McClure, that being the only case in court against them in Adams county, Ohio; that said warrant of attorney was found in the clerk's office of the court of common pleas for Adams county, Ohio, in its proper place among the other papers on file in said case, numbered with the number corresponding to the numbers of the declaration and other papers in the case, to-wit: No. 1423."

The warrant of attorney referred to in the agreed statement of facts, is as follows:

"Having settled with Benjamin Bowman, administrator of the estate of Andrew Boyd, deceased, of and concerning all matters touching the estate of Andrew Boyd, deceased, and finding that we have had and received of and from him, the said Benjamin Bowman, the sum of thirteen hundred and ninety-

three dollars and seventy cents, more than we are entitled to receive of him, as the avails of said estate, we do hereby, and in pursuance of the said settlement filed in the case of the treasurer, etc., for our use against said Bowman, administrator of Andrew Boyd, deceased, appoint and constitute George Collings our true and lawful attorney, for us, and in our names, to confess a judgment to and in favor of the said Benjamin Bowman, for the above sum of thirteen hundred and twenty-three dollars and seventy cents—the said judgment to be confessed during the present term of the court of common pleas of Adams county. But it is understood that for the sum of two hundred and twenty-six dollars and ninety-eight cents, received of the said Bowman since the settlement of said estate, the said parties hereunto are not responsible, each for the other, but the said Bowman relies on the ability of the persons respectively, by whom the said $226.98 were received of the said Bowman, since said settlement. John McClure, [seal]; Charles Callen, [seal]; Esther Moore, [seal]; Sam'l Boyd, [seal]; Rob. Mills, [seal]; John Boyd, [seal]; by their attorney in fact, Rob't Boyd, [seal]. 13th January, 1827. Witness. John Sparks."

The record of the suit of *Bowman* v. *Boyd et al.*, in which the judgment referred to in the agreed statement of facts was rendered, shows that a declaration in assumpsit was filed by Benjamin Bowman against Robert Boyd, Samuel Boyd, Esther Moore, Robert Mills, Margaret Mills, Charles Callen, Rebecca Callen, John Boyd, John McClure and Ann McClure. The cause of action was an account stated between those parties jointly with the plaintiff, by which $1393.70 was found due, and there was a promise to pay the same on request, and a breach of that promise. There was nothing in the record to show that any of the parties were under coverture. The record shows no process, and the entry of the judgment is as follows : " And now of this day, that is to say, at the June term, in the year of our Lord one thousand eight hundred and twenty-seven, come the plaintiff by his attorney aforesaid, and the plaintiff, by his attorney, having proceeded and filed here in court his declaration against the

said defendants, the defendants, by George Collings, Esq., their attorney, come into court, and, by virtue of his power of attorney, filed in this court, confessed judgment for the defendants for the sum of one thousand three hundred and ninety-three dollars and seventy cents in damages; and therefore it is considered by the court, that the plaintiff recover against the defendants his damages aforesaid by them confessed, and his costs by him about his suit in this behalf expended, except the docket fee."

The deed on file, referred to in the agreed statement, shows a sale of the land, under an execution issued on the judgment, to Howell, under whom the defendant claims.

The questions arising upon the statement of facts, were reserved in the district court to this court for decision.

*J. H. Thompson* and *Wells & McFerron* for plaintiff:

1. The court which rendered the judgment in *Bowman* v. *Boyd et al.*, had no jurisdiction over the persons of Margaret Mills, Ann McClure and Rebecca Callen; and, therefore, the judgment under which the defendant claims is, as to them, null and void, for every purpose.

The judgment was rendered on confession by virtue of a power of attorney, "*filed in this court,*" and, therefore, a part of the record. The power of attorney found among the files is not executed by these three defendants at all, and, therefore, does not bind them.

No presumption can be made in favor of the proceedings of a court of general jurisdiction, to aid defects in its records, when the record shows *all that has been done.*

See 13 Ohio Rep. 209, 219; 4 Ohio Rep. 88; 12 Ohio Rep. 253, 273; 22 O. L. 63; 10 Pet. 449; 15 Johns. 141; 9 Mass. 464; 1 Conn. 429; 15 Ohio Rep. 445, 465; 19 Ohio Rep. 222, 238; 7 Ohio Rep. 249, 436; 3 Ohio St. Rep. 494, 499; 6 Ohio Rep. 366, 370, 535; 20 Ohio Rep. 344, 351, 354, 360.

2. Mrs. Mills, Mrs. McClure and Mrs. Callen were, at the date of the judgment under which the defendant claims, married women. Even were there a warrant of attorney among the papers in this case, regularly executed by these married

women, the judgment taken under such power would be void as to them.    *Worthington's lessee* v. *Young*, 6 Ohio Rep. 313, 335, 358; *Needles' ex'rs* v. *Needles*, 7 Ohio St. Rep. 432; *Tullis' adm'rs* v. *Wiley's adm'r*, 6 Ohio Rep. 294, 297; *Hughes* v. *Watson*, 10 Ohio Rep. 127, 133; *Carr* v. *Williams et al. Ib.* 305, 310; 12 Ohio Rep. 364, 386; 13 Ohio Rep. 116, 118; 18 Ohio Rep. 567–9.

*E. P. Evans* for defendant:

1. Is the judgment against Mrs. Callen, Mrs. McClure and Mrs. Mills *void*, or is it only voidable? If void, nothing passed by the subsequent proceedings; if voidable, the purchaser is protected in his investment. The law in Ohio on this point is clear and well settled. A judgment that is irregular, and that could be set aside on motion, is not void, and can not, in a collateral proceeding, be treated as a nullity. 3 Ohio Rep. 518, 521; 2 Pet. 163, 168; 12 Pet. 718.

2. The record of a judgment imports absolute verity and can not be impeached or contradicted by parol. 5 Ohio St. Rep. 318; 3 Ohio St. Rep. 500. If the records of court, can be open to investigate, contradict or limit by parol evidence, as to the facts stated in them, then the protection of innocent persons who part with their money in the faith and sanctity of judicial records, will be removed.

To hold the purchaser at judicial sales responsible for the errors of the sheriffs, or the acts of attorneys, and compel him to look beyond the record to see if the court had jurisdiction, would effectually destroy all confidence in judicial sales, and, in the language of an eminent judge, " the records of courts, in place of offering protection, would be a *snare* for honest men." *Sheldon* v. *Newton*, 3 Ohio St. Rep. 501; 5 Ohio St. Rep. 318; 3 Ohio Rep. 561.

3. It is argued by the plaintiffs that the court had no jurisdiction of the persons of Callan, McClure and Mills. The declaration names them, and the record shows that they appeared by George Collings, their attorney, and, by virtue of a warrant, waived process, and confessed a judgment in favor of the plaintiff. It is claimed by the plaintiffs that no such

warrant was given, and that *he* had no authority to act for them, and by contradicting the record by evidence showing that he acted without authority, that the judgment as to them is a nullity, and that the purchaser was compelled, at his peril, to look beyond the record and inform himself of the authority of the attorney whose name appears in the record. This seems to me an extraordinary stretch of judicial protection, and charges the error of the attorney, if any, on the wrong person. The law in force at the time the judgment was taken (3 Chase, 1851, sec. 60), did not require, only when the court demanded it, the attorney to present his authority for confessing the judgment. If the rule contended for by the plaintiffs should be adopted, an immense amount of real estate must be swept away from the present holders. *Lessee of Boswell* v. *Sharp et al.,* 15 Ohio. Rep. 464–5.

4. "Our courts of common pleas are courts of general jurisdiction; and, as to them, whenever an attempt is made to impeach, collaterally, their judgments, decrees and proceedings, the existence of jurisdiction will be presumed, their records being silent upon the subject." 18 Ohio Rep. 546–7.

5. It is argued that the ancestors of the plaintiffs were *femmes covert* at the time of the rendition of the judgment, and could not appear by attorney, and the judgment is void. I do not think it necessary to argue this proposition, or cite authority against it. The circumstances go far to contradict the absence of authority to confess the judgment. McClure and wife lived in sight of the land for thirty years, and not a murmur was heard from them; but after they had passed away, their children claim the land, with its increased value and improvements, on the ground that no warrant of attorney can be found on file from her to George Collings.

GHOLSON, J.—The remark is frequently found in judicial opinions, that, to give validity to the judgment of a court, there must be jurisdiction of the cause and of the person. Jurisdiction of the cause arises out of some right or claim to a thing within the territorial jurisdiction of the court; or, out of some controversy between parties—involving the claim of

one or the other, for the performance of some act, as the
payment of money, the transfer of property, or the doing or
omission or forbearance to do some act—which controversy
the court is invested with authority to decide.   When a court
is moved by one party to enforce a claim, or decide a contro-
versy, and for that purpose brings before it the other party,
this is obtaining jurisdiction of the person.   Jurisdiction of
the person is properly acquired by personal notice or service
of process; but other modes have been substituted by express
provision of law or the practice of courts—as publication,
notice to the agent or attorney of the party, or an appearance
for him by one of the attorneys of the court.

A suit is "the prosecution or pursuit of some claim,
demand or request.   In law language, it is the prosecution
of some demand in a court of justice.   The remedy for
every species of wrong is, says Judge Blackstone, 'the
being put in possession of that right whereof the party
injured is deprived.'   'The instruments whereby this remedy
is obtained are a diversity of suits and actions, which are
defined by the Mirror to be 'the lawful demand of one's
right;' or, as Bracton and Fleta express it, in the words of
Justinian, '*jus prosequendi in judicio quod alicui debetur.*'
Blackstone then proceeds to describe every species of remedy
by suit; and they are all cases where the party suing claims
to obtain something to which he has a right.   To commence
a suit is to demand something by the institution of process
in a court of justice; and to prosecute the suit is, according
to the common acceptation 'of language, to continue that
demand."   Marshall, C. J.   *Cohens* v. *Virginia*, 6 Wheat.
264–407.

When process is instituted—when, on a demand for it in
the prescribed mode, the process of the court is issued—the
steps taken under that process must be matter proper for the
consideration of the court.   The court must determine whether
the suit is prosecuted—whether the demand for the thing to
which a right is asserted is continued.   So, if it be claimed
that process has been waived, the fact of waiver, or the
authority to waive, as shown by the evidence, must be

decided by the court. This determination or decision may
be express on the very point, as by an assertion on the
record that the process has been served, or that the party
has appeared by an attorney, or it may be necessarily implied
in the action of the court upon the demand of the party.
The determination or decision that a party has been served
with process, or that he has given authority to waive process,
if in truth he has not been served, or given such authority,
is a determination or decision, when he has had no oppor-
tunity to be heard. Hence the right to show, in opposition
to the record of such determination or decision, the truth by
evidence has been claimed, as required by the principles of
natural justice.

If the court acts at all upon the question whether a party
has been served with process, or has authorized an appear-
ance in the absence of such party, then the decision must be
made at the risk of an incorrect conclusion. And it would
be absurd to require notice of such inquiry, as that would
involve a similar inquiry whether there was notice of that
notice. The court must act upon the demand for which pro-
cess has been instituted, either with or without inquiry into
the fact whether such process has been served. That there
should be no inquiry—that a judgment by default should be
rendered without inquiry into the fact whether the process
had been served on the defendant—can not, with any pro-
priety, be claimed. If, then, the inquiry should be made,
what effect is to be given to the determination or decision?
It is obligatory, unless impeached or set aside in the mode
prescribed as to other decisions of the court, or may it be
disregarded, as null and void, whenever brought in question,
upon allegation and proof that the party, in truth, had no no-
tice or opportunity to be heard? Here arises a conflict between
principles of policy, which require the former conclusion,
and principles of natural justice, which lead to the latter;
and, as might be expected in cases of such conflict, the deci-
sions of courts have differed.

The decisions may, to some extent, be reconciled by classi-
fying the cases, in view of the well known distinction between

courts of general and courts of special and limited jurisdiction, and of the difference between domestic judgments and the judgments of other states and countries. As to the judgments of courts of general jurisdiction, under which class the one now under consideration falls, the decisions in this state, though perhaps not entirely uniform or consistent, do undoubtedly show a strong inclination to sustain such judgments against indirect or collateral attacks on their validity and effect. It appears to have been thought that natural justice is satisfied, when notice is required, and an impartial tribunal established to ascertain and determine whether it has been given. Nor can it be properly said that such a tribunal has jurisdiction because it has so decided. Its decision is binding because it was authorized to make it, and because public policy, and the respect due to the sovereignty it represents, at least in tribunals acting under the same sovereignty, requires that the decision should be regarded, while it remains on the record unimpeached and unreversed.

We feel inclined to go as far in sustaining the validity and effect of the judgments of courts of general jurisdiction as our predecessors have gone, and no disposition to permit an indirect attack upon them in any case not authorized by former decisions. And, looking at those decisions, we are satisfied that, without disturbing any of them, we are at liberty to sustain the judgment under consideration in this case.

In the case of *Lessee of Fowler* v. *Whiteman*, 2 Ohio St. Rep. 270, 286, it is said to have "become established by a series of decisions in Ohio, that the finding of a court of general jurisdiction, upon a subject matter properly before it, shall not be collaterally impeached; but while such finding is unreversed, it is conclusive of the matter so found." The finding in that, and in the previous cases there referred to, was upon the question of notice. In the case of *Moore* v. *Starks*, 1 Ohio St. Rep. 369, 373, it was intimated, though no decision was made or required on the point, that there is a distinction between an express finding that notice had

been given, and the necessary implication of such a finding, shown by the act of rendering the judgment. Whether such a distinction can be properly made, we need not decide. The point really decided in that case was, that where it *affirmatively* appears in the record, that the defendant was not served with process or otherwise legally notified, the judgment is void. This was the principle on which the court acted; whether it was properly applied, we are not required to say.

Regarding the above as the principles properly applicable to this case, in the record of the judgment now under consideration, we have this express finding of the court: "the defandants, by George Collings, Esq., their attorney, come into court, and by virtue of his power of attorney, filed in this court, confessed judgment for the defendants, for the sum of," etc. Now, this finding not only entirely fails to show a want of jurisdiction, but shows its existence in positive and direct terms. It is claimed, that a power of attorney, found among the papers of the case, shows that it was not executed by some of the defendants, and that in truth some of the defendants were married women, and could not legally execute a power of attorney. But the power of attorney found among the papers is not a part of the record—neither in fact, nor certified to us as such. It was not intended to be made so, either by the law, or the action of the court. The object of filing the power of attorney, on which the judgment was predicated, was, not that by it or by proof connected with it, the judgment of the court might be shown to be without jurisdiction and void, but to furnish the parties affected by the judgment ready means to apply to the court itself, to correct any irregularity or error. Had such an application been made, and it had been shown, that by mistake or inadvertence, a judgment had been rendered against parties who had not executed the power of attorney, or who were married women, there can be no doubt the judgment would have been set aside.

The other point which has been presented for our consideration in this case is novel, but we think is answered by the general principle as to the validity and effect of a judgment,

and the provision of the statute subjecting the real estate of a debtor to sale under a judgment and execution. The judgment was rendered against Rebecca Callen, who then owned the land in controversy, who was in fact a married woman, but whose coverture is not shown by the record, was not relied on as a defense, or urged as an objection to the rendition of the judgment. It is not claimed, and certainly is not law, that a judgment against a woman is void, if, in fact, she was at the time a married woman. The judgment then was a valid judgment against Rebecca Callen.

The question then arises, whether it bound her real estate, so as to authorize its sale, notwithstanding the restrictions upon the alienation by married women of their real estate. The statute (2 Chase, 1297), shows what was the legal effect in this respect of the judgment against Rebecca Callen. "The lands and tenements of a debtor shall be bound for the satisfaction of any judgment against such debtor, from the first day of the term at which judgment shall be rendered, in all cases where such lands lie within the county where the judgment is entered, and all other lands, as well as the goods and chattels of the debtor, shall be bound from the time they are seized in execution." The sheriff was authorized to sell the lands under an execution, and to make to the purchaser, " as good and sufficient a deed of conveyance for the lands and tenements so sold, as the person or persons against whom such writ or writs of execution were issued, might or could have made for the same, at, or any time after said lands became liable to said judgment."

The judgment shows that Rebecca Callen was a debtor. The legal effect of the judgment was to bind her lands and subject them to sale under execution. This legal effect can not be destroyed by averment and proof that she was a married woman. Even a technical difficulty, which might have been suggested under the provision of the statute last quoted, had Rebecca Callen been sued alone, is obviated by the fact that her husband was also a defendant, and both must be regarded as having constructively joined in a conveyance to the purchaser. Nor do we think, assuming, as is claimed by

the defendant in this case, and as we may assume, in support of the validity and effect of the judgment, that the debt for which the judgment was rendered against the husband and wife was, really, the debt of the wife, there is any hardship in the case. A married woman has no power to convey or dispose of her land, except as provided by law. Nor at common law could lands be sold under execution for payment of debts. But when the law authorized lands to be sold for the payment of debts, no reason can be perceived why the lands of a woman, who, when sole, has contracted a debt, or, after marriage, incurs a personal liability, should not be liable as the lands of any other debtor, and sold on a judgment against her and her husband. But it is enough in this case to say that we can not permit the plaintiffs to vary or destroy the effect of the judgment by proof that they, or those under whom they claim, were married women at the time of its rendition.

Looking at all the facts contained in the agreed statement, and giving them what we regard to be their proper legal effect, we think we are bound to render a judgment for the defendant.

Judgment for defendant.

SUTLIFF, C.J., and PECK, BRINKERHOFF and SCOTT, JJ., concurred.