[*General Term, April,* 1873.]

ANDREW ERKENBRECHER *v.* THE CITY OF CINCINNATI, DAVID K. ESTE, ET AL.

The canals of this state were authorized and constructed for the purposes of navigation, not to afford private persons water-power. The latter may be done where the former is not materially affected, but subject to the right of the state to withdraw the same at any time it may choose. And the state may abandon or relinquish its canals, or any part thereof, whenever, in the exercise of its uncontrollable discretion, it may deem it best for the public interest to do so.

If the canal commissioners, or board of public works, having authority without special legislation so to do, have authorized the construction of a navigable water-way, connected with and supplied by the canal, but which, when constructed, forms no part of the canal, for the purpose of obtaining water-rents for the benefit of the canal fund, such board, without special legislation, may abandon and relinquish the same, or any part thereof, without the consent of persons whose property rights may be injured in value by the non-continuance of the same; and all public improvements theretofore forbidden, for the sole reason that they would destroy or injuriously affect navigation in such water-way, are no longer forbidden after navigation has been rendered impossible by the acts of such state authorities, and no injunction will be granted to restrain them.

*McGuffey, Morrill & Strunk,* and *C. D. Coffin,* for plaintiff.

*Matthews & Ramsey,* for defendants.

YAPLE, J.    This case comes before us, to be tried upon the facts and the law, by reservation from Special Term.

The plaintiff is the owner of a lot of ground in the city of Cincinnati, being east of Broadway, on the northeast corner of Eighth and Broadway streets, upon which he has erected and carries on a large manufacturing establishment, operated in part by water flowing through his lot from the Miami and Erie Canal, from which it is drawn at Canal street, midway between Sycamore and Broadway streets; thence running south, twenty feet wide, to the south side

of Court street; thence south, forty feet wide, across Ninth street, to within forty-four feet of Eighth street; thence east (crossing Broadway and running through and beyond plaintiff's lot until it again empties into the canal), six feet wide, this last part being arched over. The wide part is called " Lock Port Basin ;" and, from the canal at Canal street to the south end of the basin, navigation by canal-boats in the past, and with some impediments and interruptions in later years, was practicable and common. The use of the water flowing through his lot, the plaintiff rents from and pays rent for to the state, under a contract made with the state canal commissioners, now board of public works. And if the water-way from the canal to the south end of the basin shall continue to be open and unobstructed for such navigation, as originally constructed and used, it will be of great convenience and benefit to the plaintiff, his property and the business carried on there, and by saving, among other things, drayage, etc.

The defendant, the City of Cincinnati, has taken the proper steps to, and contemplates building a bridge, at Ninth street, across the basin, and also to lower the present bridge at Court street, which, if done, will render navigation from the canal to the south end of such basin impossible; and it also intends, at such Ninth street bridge, to leave a water-way for the water flowing from the canal through the plaintiff's premises, only twelve feet wide in the clear, and four feet depth of water, the center of such channel to be the line midway between Broadway and Sycamore streets. The other defendants, D. K. Este and others, own all the lots abutting on both sides of the basin its entire length, and they are intending and preparing to fill up the basin so as to leave only a channel twelve feet wide and four feet depth of water. The action of these defendants and the city, if permitted to be carried out, will utterly destroy every part of this water-way for navigation; but will not, as we find upon the evidence, diminish the actual sup-

ply of water the plaintiff has been accustomed to receive at his premises for the uses of manufacturing.

The plaintiff seeks to enjoin the city and its co-defendants from carrying out the changes they have undertaken to effect.

This water-way is not, and never was, any part of any canal constructed and owned by the state. It originated in an authorized system of procuring property and water rights by the canal commissioners, for the use of the canal fund of the state. By this means, where the efficiency of canals would not be impaired thereby, water could be withdrawn from them to be applied to milling, manufacturing, and the like uses, for which the state could derive a rental for the benefit of the canal fund.

In pursuance of such powers and for such objects, on January 4, 1831, the Bank of the United States, which then owned the same and also all the lands now abutting on the basin its entire length, conveyed by deed, for a mere nominal consideration of one dollar, to the State of Ohio, "for the use of the canal fund of the State of Ohio," a lot east of the plaintiff's lot, and on the southeast corner of Eighth and Broadway.

On this property it was intended that the water from the canal should be used, and which the canal commissioners would sell or rent. With this lot of ground the bank also conveyed "the right or privilege of a race or water-way to the same" (through its other lands above mentioned), "upon the following conditions, viz : The race to commence on the south side of the canal, north of Tenth" (now Court) "street, half-way between Broadway and Sycamore streets, and to run southerly parallel to those streets to within fifty feet of Eighth street, and from thence easterly parallel to Eighth street, at the distance of fifty feet therefrom, to the corner of the lot of land before described" (southeast corner Eighth and Broadway). " The said race to be excavated, walled, and bridged in a suitable manner,

at the expense of the State of Ohio, and so as to admit the free passage of boats, etc., from the canal, along said race or channel, to the elbow and Eighth street; to be excavated and walled twenty feet wide, to the south side of Tenth or Court street, and from thence to be excavated and walled forty feet wide to within fifty feet of Eighth street—one-half of the excavation of that space to be paid by the bank—and from thence eastwardly to be excavated and walled and arched over six feet wide in the clear between the walls, the whole to be done at the expense of the State of Ohio. This grant merely concedes a passage or way for water to pass from the canal to the lot of land conveyed as aforesaid to be used on said lot."

It is evident that the object of the bank, in giving this lot and water-right to the state, was in consideration of getting in return a navigable channel through the residue of its property lying north of the lot conveyed, looking to the resulting increased value of its remaining property for sale or use as fully compensating it for such lot.

On July 5, 1831, after the above-mentioned conveyance by it to the state, the bank conveyed the plaintiff's lot (northeast corner of Eighth and Broadway) in fee simple to Clark Williams, under whom the plaintiff claims, and whose title he holds to said real estate, and all its appurtenances. In this deed the bank made this reservation : "Excepting and reserving a water-way or race of *twelve* feet in width along the north side of said lot of land from Broadway to said lot of land granted to the State of Ohio, so as to admit the free passage of water along the whole length of said race or water-way ; but over which the grantee in this deed, his heirs or assigns, will have the right of building, in a reasonable way, not obstructing, however, in any shape, the free passage of the water."

And the bank, still owning all the lands abutting upon the basin, stipulated in the deed as follows :

" It is further understood, and stipulated with the said Clark Williams, his heirs and assigns, that the said race or

water-way from 'Broadway west and north, is to remain open for boats, etc., the width from. Broadway west halfway to Sycamore street to be *twelve* feet, and from thence north to Tenth" (Court) " street, the width to be forty feet or upward, and from thence to the canal, to be twenty feet wide, the extent of the privilege hereby granted being, that the said Clark Williams, his heirs or assigns, may, *in common with others*, pass boats along said water-way from the canal south and east to Broadway."

This stipulation, the state being no party to the deed or transaction, makes an eastern extension of this water-way for boats twelve feet wide from the line midway between Sycamore and Broadway, while the deed from the bank to the state only provides for a six-foot way from the south end of the basin to be constructed by the state itself.

And all the conveyances from Clark Williams, down to and including that to plaintiff of his lot, contained this provision : " Excepting the water-race of *twelve* feet in width along the north side of said lot of land, from Broadway to the eastern boundary, so as to admit the free passage of water along the whole length of the race, but over which the grantee, his heirs and assigns, will have the right of building in a reasonable way, not obstructing the free passage of the water, *with all the privileges and rights to the same belonging*, as secured by deed recorded in book No. 41, page 153, of the Records of Hamilton county, Ohio." (The deed of the bank to Clark Williams.) All the bank's realty, including the lot conveyed to the state, and the plaintiff's lot conveyed by the bank to Clark Williams, was comprised in out-lots Nos. 9, 10, and 11 of the city of Cincinnati, which, on September 3, 1832, the bank subdivided into lots, and executed and had recorded a plat thereof, as required by statute. This plat indicated the canal northeast of the property from north of Tenth, or Court street, to the race-way running from the basin, at a point fifty-six feet north of Eighth street, and two hundred and seventeen feet east of Broadway. It also represented Court, Ninth,

and Eighth streets running east and west, and Sycamore and Broadway running north and south; also, the twenty foot race-way from the canal north of Court to the south side of Court street, then the basin to within forty-four feet north of Eighth street, as sixty feet wide, and the race-way thence east as twelve feet wide. On the east and west sides of the basin, and running from Court to Eighth streets, two streets binding on the basin, and called East and West Cheapside, were laid off, each about twenty-eight feet wide. The plat dedicates the streets and alleys indicated upon it to public use, and concedes them to the city of Cincinnati as public streets and alleys, upon condition that the same shall always be kept in good repair by the city, and that no bridge or ford shall ever be made across either of said basins. The large basin is said to be central between Broadway and Sycamore streets, and extends from Court street to within forty-four feet of Eighth street the width of sixty feet.

On October 1, 1834, an additional plat was made and recorded by the bank and other parties, which is more extended and minute than the first one, making East and West Cheapside about thirty-five feet in width each, but containing no other matters of importance affecting this case.

It will be observed that the State of Ohio was no party to any of these proceedings, except that in which it obtained the lot, in January, 1831, from the bank, for the purpose of securing a site for the use of the surplus water of the canal, from the future rents of which a revenue for the canal fund was expected to be derived. Navigation from the canal to the south end of the basin was what it gave to the bank for the benefit of its lands, for this lot and the privilege of flowing water to the same. It is clear that its construction was a cost and a burden to the state; for its own uses, a race-way not navigable for canal-boats would have been amply sufficient. The canal commissioners (now board of public works), consummated the entire transaction and

work without the special action of the legislature. When done, this water-way and basin were no part of the canal: by them the state obtained a mere incident for the benefit of the canal fund, and the work as actually constructed in a navigable form; for the benefit alone of the bank's other lands, which it then owned, was a mere consideration for, or incident to that incident.

It next appears that, on and prior to April 12, 1865, this subdivision to the city, made by the bank in 1832, had become a crowded theater of conflicting business interests, and these basins and water-ways were much encroached upon and interfered with by the occupants of the adjoining property. The state, to maintain it in its original condition, was driven to the necessity of bringing suits constantly against parties encroaching upon such works; so that it is easy to see it was in a fair way to lose more in bearing the expenses of litigation than all the rents it could derive from the water—its only object in retaining it—would yield; while a mere race-way, ample for its purposes, but not admitting of navigation, would probably not be trespassed upon. On the last-named day, one Joseph Richter, the owner of a lot of ground east of Ninth street, and binding upon the west side of East Cheapside, brought suit in this court against the lessees of the canal and the acting member of the board of public works, to restrain by injunction the maintenance by them of suits against him for encroaching upon said water-way, etc., which he averred they were bringing almost daily; and also stating what he claimed as his rights, in equity, in the premises. To this action, the late George Peabody, who owned all the other lands formerly belonging to the bank, as its grantee, was made a party, and also the board of public works of the state, and the state itself, as the record recites, appeared by its attorney; but the present plaintiff was no party to that suit, or his lot represented therein. On January 2, 1868, a decree, by consent of all the parties, was rendered in the action. It states: " And this day came also the State of Ohio, by her

attorney, and through the board of public works, and is also made a party," etc.

Peabody's title, as against all the parties, was quieted and confirmed, "subject to the easement of a mill-race or water-way in the center thereof" (*i. e.,* on the line running through the center of the basin), "from Court street to within forty-four feet of Eighth street, to be *twelve* feet wide in the clear between the walls, or side-planking, and to be four feet below the standard water-level, forming a clear run for the water from the canal of twelve feet by four feet, and also channels or turns of the same capacity at the south end, and at the north end connecting with the two mill-races crossing Cheapside street at those points," etc., etc. "The said George Peabody to extend Ninth street across said lot sixty feet, forty-five feet wide," etc., etc. "The grade of Court street may be cut down to any grade above the water-level, which will not interfere with access to clean out the water-channel on both sides, which the proper authorities may think proper, and they are hereby authorized to so change the grade," etc.; also, giving the state the right to deepen the race to more than four feet if it shall find it necessary to do so, at its expense.

The state, in 1836, leased all, or nearly all, its water-power between the canal north of Court street and the Ohio river, to Clark Williams, upon certain terms and at certain rates of rent reserved; and the same is now used by a large number of lessees, who have purchased through Williams. The terms of his lease, which are incorporated in all the sub-leases from him down to the present holders, are substantially the same as those prescribed by the subsequent statute of March 28, 1840 (1 S. & C. 206, sec. 23); that is, they "contain a reservation and condition that the state, or its authorized agents, may at any time resume the privilege or right to the use of water, or any portion thereof, whenever it may be deemed necessary for the purposes of navigation, or whenever its use shall be found in any manner to interfere with, and injuriously affect the

navigation," etc.; "and whenever the privilege shall be resumed in whole or in part, the rent reserved, or such portion thereof as shall be determined upon, in the lease, etc., shall be remitted, cease," etc.

Upon these facts the plaintiff claims: 1. That by the terms of the conveyance of the bank to Clark Williams of this, his lot, on July 5, 1831, the full water rights and privileges, including the right of navigation mentioned in that deed, and in the deed of January 4, 1831, by the bank to the state, became appurtenances to his lot, and were conveyed with the lot and as parts of it to him, especially as against the bank and its then remaining lands, and as against all subsequent purchasers thereof through the bank, and as against "third persons, or parties, who may seek to destroy or injure such appurtenances."

·2. That the bank, by its plats of September 3, 1832, and October 1, 1834, dedicated all these water-rights to the public and the city, and that the latter accepted and is bound by such dedication, and also by the prohibition against constructing a bridge or ford across the basin, as it is seeking to do by the erection of a bridge on Ninth street, according to the rules of law as settled in *Le Clercq* v. *Gallipolis*, 7 Ohio, 217, pt. 1. That is, "Where land is dedicated to the use of the inhabitants of a town, one or more, especially one whose property is affected in value, may enforce the execution of the trust; that those entitled to the use acquire a vested estate or interest, the enjoyment of which may be obtained in chancery; and any interference with an existing enjoyment, or the appropriation of the ground to a different use, may be prevented and restrained by injunction."

3. He claims that both by grant and dedication, he has the right, as against the city and its co-defendants, to navigate this water-way and basin, in common with the public, and a private right on account of the special benefit and value the same confers upon his particular lot; that the defendants are seeking to deprive him of this public right,

and also of his private property rights, and to inflict upon him an actual substantial injury.

4. He says that having been no party to the Peabody suit in this court, the judgment rendered therein in no manner affects his rights.

The defendants claim : 1. That this water-way is artificial in its nature, and but temporary and precarious, as the state could at any time resume the water, and leave the channel and basin dry and abandoned ; that the canal commissioners, or board of public works, never had any power by any means, contract or otherwise, to create this water-way and basin as a permanent thing; and that the rights thereto and therein, which the plaintiff claims, could not become part of his realty so as to pass by deed and run with the land, but rights in respect to the same can only exist by mere personal contract or covenant between grantor and grantee ; and it is also claimed that the plaintiff has no *easement* which the law can recognize.

2. That the same reason applies to any claimed dedication, as its nature is not such as to allow of an estate being created in it.

3. That the whole was authorized and constructed under the authority of the canal commissioners, or board of public works, alone, without the aid or special authority of the legislature ; and that they alone, without legislation, may surrender or abandon the whole, or, for a stronger reason, any less part of it whenever they might choose to do so; that no parties could acquire any such vested right as to prevent them, for all rights were acquired with 'the legal condition attached, that such abandonment or surrender, in whole or in part, might be exercised at any time.

4. That in the Peabody suit the state did surrender and abandon this work entirely for the purposes of navigation, retaining only a passage-way for water to flow from the canal to the lot it bought in January, 1831, from the bank; and that all restrictions against the bridging or filling the

basin depend upon the continued right of navigation, and when the state takes that away, all such restrictions fall with that upon which alone they were founded; that the state could do this without the plaintiff's, the city's, or anybody else's consent, as it depended upon its own will and pleasure, in the exercise of a sound discretion, which discretion can be controlled by no other authority.

5. And that the plaintiff's supply of water will not be lessened by the change; and even if it would be, or taken away altogether by the act of the state, plaintiff is powerless to prevent it, his remedy being provided in the lease thereof from the state, viz: a corresponding abatement, or an entire cessation of payment of rent.

We think there can be no doubt of the fact that this water-way and basin constitute no part of the canal; that the state procured this water-right and has flowed it through these premises merely as an incident for the benefit of the canal fund, and that the capacity of the work to admit of navigation was for no purposes of the state, but merely for the profit and convenience of the property owners, thus making navigation the mere incident of an incident. Originally this right was, doubtless, of great value to the property owners in the vicinity; for when it was conferred railroads were almost unknown; the revolution in the modes of transacting the business affairs and of conducting the commerce of the country, which has been wrought in later times, was then not thought of; nor was the growth and changed condition of the public needs in the city foreseen or realized.

The arrangement could not, in legal contemplation, be permanent. It could exist only at the sufferance of the state. This, our Supreme Court has recently held, is the case with our canals themselves. In *Hubbard* v. *City of Toledo*, 21 Ohio St. 398, the fact is stated that the right of the state, at any time, to resume the waters of our canals, which have been leased, is reserved to it, and it is then said: " But the abandonment of the canal by the state had

the same effect upon their privileges as would a resumption of the grant. Since, then, the consequences of resumption and of abandonment are identical, it is incredible that a liability should arise, by implication from the latter, which, by express negation, can not from the former. If it were otherwise, the state would be compelled to maintain her canals, at any sacrifice, for the benefit of the lessees of surplus water. This can not be. The creation of water-power did not enter into the purpose of their construction. It was adventitious, incidental, and, therefore, necessarily *precarious;* and those obtaining grants thereof must be supposed to have taken them, subject to the fluctuations of tides and the changes of time."

It is obvious that the right to abandon or relinquish its canals, in whole or in part, rests with the state alone, subject to the exercise of its own sound discretion, which can not be controlled by any other authority. It need not, therefore, resort to any court to enable it to do so, though that method furnishes conclusive evidence of the actual exercise of the right to abandon or relinquish; but the fact can be proved in any other proper way. Further, if the state may, at its pleasure, abandon or relinquish the entire canal, it may, for a stronger reason, relinquish any portion of its rights. This water-way was provided for and constructed under the authority of the canal commissioners, or board of public works, alone, without the special authority of the legislature, and it follows that the same authority is competent to abandon or relinquish it in whole or in part. This is decided in *The State of Ohio* v. *Buttles,* 3 Ohio St. 309, in the case of an unauthorized loan of the state's moneys; but as loans could only be authorized by the legislature, it was held, while stating and recognizing the general rule, that an act of the legislature was necessary in that case to effect the authorization and ratification of the loan.

Here, the record of the Peabody case expressly states that the state appeared, by its attorney and by its board of

public works, and consented to the decree rendered therein. The statute (1 S. & C. 88, sec. 4) requires the attorney-general of the state to appear for the state, when required by the governor or general assembly, in any court or tribunal in any case in which the state may be a party or directly interested. In the case of *Callen* v. *Edmiston,* 13 Ohio St. 446, our Supreme Court decide that where the record of a judgment rendered in this state finds that a party appeared by attorney, such finding is conclusive and can not be disproved in any collateral proceeding. Chief Justice Robertson, in *Roberts* v. *Caldwell,* 5 Dana, 514, says: "But as the record recites that the parties appeared by their counsel, that fact, thus certified, must be accredited."

As to the credit given to a judgment in one state which has been rendered in another, that, under the federal constitution, is to be regulated by Congress. As to such judgments, *Shelton* v. *Tiffin,* 6 How. 186, holds that the recital of appearance by attorney may be disproved, though strong *prima facie* evidence; but a finding that a party appeared in person, can not be contradicted in a collateral proceeding founded upon such judgments.

In this case it is expressly found that the state did appear by the board of public works.

The decree in the Peabody case, when carried out, plainly renders navigation through any part of this water-way impossible; nor has it been attempted since, nor can the state be compelled to make or keep 'it navigable; and as the prohibition against bridging, etc., the basin by the city, contained in the dedication, and the necessity for the basin itself, was obviously founded upon the idea of preserving navigation, it entirely falls when the possibility of navigation is ended by the state abandoning such right, which, evidently, was never an object or a benefit to it, but a mere burden taken upon itself for the lot-owners. The adjoining lot-owners' title carries them to the center of the basin, subject to such easement as may exist.

This view of the case requires us to render a judgment for the defendants.

We need not, therefore, determine whether the city, notwithstanding the prohibition in the dedication against bridging, may not do so by paying damages to all persons for all injuries caused thereby; and whether the latter must not make claims, or waive such damages, under the municipal code, sections 563, 564, 575. If these provisions apply to cases of this character, it is obvious such improvements can not be restrained by injunction. This would apply only to the city, not the other defendants. Neither is it necessary for us to determine any of the other questions so ably and learnedly discussed by counsel.

Let judgment be entered for the defendants.

Attorneys for plaintiff argued:

The right to the water-way and basin, and of navigation, is an appurtenance belonging to plaintiff's lot—an easement, or a privilege, interference with which will be restrained by injunction, even if the right only be affected. *Maure* v. *Stephens*, 15 Sim. 377; *Talk* v. *Moxhay*, 11 Beav. 571; S. C., 2 Phil. 774; 1 H. & T. 105; *Patching* v. *Dobbins*, Kay, 1; *Coles* v. *Sims*, 5 De G., M. & G. 1; 1 Kay, 56; *Peggote* v. *Stratton*, De G., F. & J. 33; *Whitney* v. *Union R. R. Co.*, 11 Gray, 366; *Parker* v. *Nightingale*, 6 Allen, 341; 21 Law Rep. (Boston), 658; *Tootle* v. *Clifton*, 22 Ohio St. 247; *Himrod Furnace Co.* v. *Clev. & Mahon. R. R. Co.*, 22 Ohio St. 451.

Attorneys for defendants argued:

The covenants in the deed of the bank to Clark Williams, and those contained in the deeds from the latter to plaintiff, are not real covenants running with the land, nor an easement. *Matheny* v. *Southworth*, 9 Ohio St. 347; Goddard's Law of Eas. 2; *Acroyd* v. *Smith*, 10 C. B. 164; *Weekly* v. *Wildman*, 1 Ld. Raym. 405; *Rangely* v. *Midland R. Co.*, Ld. Raym. 3, Ch. Ap. 306; *Hill* v. *Tupper*, 2 H.

& C. 121; *Southworth* v. *Le Fleming*, 19 C. B. (N. S.) 687; *Morensey* v. *Ismay*, 3 H. & C. 486; *Stockport Water Works Co.* v. *Potter*, 3 H. & C. 326; Bro. Abr. "Grant," 130; *Hurd* v. *Curtis*, 19 Pick. 459; *Mure* v. *Aldrick*, Id. 449; 1 Smith Ld. Cas., 31, 38, (marg.) 110, 118, Am. ed. *Spencer's case; Bailey* v. *Stephens*, 12 C. B. 91 (E. C. L. 104); *Perley* v. *Langley*, 7 N. H. 233; Washb. Eas. 8, sec. 11, p. 9; Id. 135, 136, 142, 161, sec. 5; *Goodrich* v. *Burbank*, 12 Allen, 459; Ang. Wat. Cour. 248, sec. 143, ed. 1849; *Grasselli* v. *Lowden*, 2 Dis. 331; *Keppel* v. *Bailey*, 2 My. & Keen. 517; *Mullen* v. *Stricker*, 19 Ohio St. 135; *Rodgers* v. *Boardman*, 16 Gray, 559; *Mayor* v. *Chadwick*, 11 Ad. & G. 571; *Wood* v. *Ward*, 3 Exch. 748; *Arkwright* v. *Gill*, 5 Mees. & Wels. 203; *Greatrex* v. *Hayward*, 8 Exch. 291; *Gavel* v. *Martyn*, 19 C. B. (N. S.) 732; *Laing* v. *Whalley*, 2 H. & N. 476; 3 Id. 675; *Elwell* v. *Birmingham Canal Nav. Co.*, 3 H. Ld. Cas. 812; *Staffordshire, etc.* v. *Same*, L. R., 1 Eng. & I. Ap. 254; *Todd* v. *Pitts., etc., R. R. Co.*, 19 Ohio St. 524; *Hatch* v. *Cin., etc., R. R. Co.*, 18 Ohio St. 121; *Junction, etc., R. R. Co.* v. *Ruggles*, 7 Ohio St. 1; *Corwin* v. *Cowan*, 12 Ohio St. 629; *Street R. R. Co.* v. *Cumminsville*, 14 Ohio St. 523; *Bowers* v. *Suffolk, etc.*, 4 Cush. 332.