Williams, C. J.
The probate courts of this state, are empowered by the constitution, in addition to their jurisdiction in probate and testamentary matters, and others expressly enumerated, to take such other jurisdiction as may be provided by law. Constitution, section 8, article 4. They have been given general jurisdiction to make inquests of the amount of compensation to be made to owners of real estate, when appropriated by any corporation legally authorized to make such appropriation. Revised Statutes, section 524. The purposes for which municipal corporations may appropriate real property, are defined, and the mode of procedure in such cases prescribed, by chapter 3, division 7, title 12, of the Revised Statutes.
When it is deemed necessary by the municipal corporation to appropriate any real property within its limits, for any of the authorized purposes, and the council shall by proper resolution declare the intention to make the appropriation, an application may be made to the probate court, and prosecuted therein to final judgment. The notice to the owners whose property is sought to be appropriated, the manner of service of the same, the empaneling of the jury, the conduct of the trial, the verdict and judgment, are all provided for, and regulated by the statute. When the assessment of the compensation has been made by the jury, the court shall make such order for its payment or deposit, as may seem proper, designating the time and place of payment or deposit, the persons entitled to receive payment, and the proportions payable to each; and the court may require adverse claimants of any part of the money or property, to interplead, and *289 fully determine their rights in the same proceeding. The court may also direct the time and manner in which possession of the property condemned shall be taken or delivered, and may, if necessary, enforce the order for the possession. No doubts that arise concerning the ownership of the property, or the interests of the parties therein, shall cause any delay in the proceeding, or in taking possession of the property. But in such cases, the court shall require a deposit of the compensation allowed; and in all cases, as soon as the compensation shall be paid, or secured by a deposit under the order of the court, possession of the property may be taken, and the public work or improvement progress. Provision is also made for prosecuting error, as in other cases, by any party aggrieved; and also for appeal. The circuit court found that the proceedings had in the probate court on the application of the defendant here, were regular; and the record shows them to be so. It is clear, therefore, that if the probate court had jurisdiction of the parties, and of the property involved, its judgment established the right of the village to enter upon and hold the property thus appropriated, and to subject it to the proposed uses ; and must necessarily operate to defeat the plaintiffs action. For, such a judgment, until reversed, is final and conclusive between the parties, and cannot be collaterally impeached. This we do not understand to be seriously controverted. The contention of the plaintiff, here, is, that the probate court, in the appropriation proceedings, acquired no jurisdiction, either over it, or its property; and the judgment, therefore, constituted no barrier to the relief sought by the plaintiff in the court below. And, it is not doubted, that unless the probate court had jurisdiction over both the property and the parties, its judgment is void, and may be collaterally assailed. The inquiry then is, was there a want of jurisdiction in either particular?
1. The claim of the plaintiff in error, with respect to the want of jurisdiction over its person, as alleged in the petition, is, that during the pendency of the proceeding in the probate court, it was a resident corporation, maintaining its general *290 office and place of business in this state, and that it was not served with notice of the application, otherwise than by publication.
The statute, section 2237, provides that notice of the time and place of the application, “shall be given personally in the ordinary manner of serving legal process, to all the owners or agents of the owners of the property sought to be appropriated, resident in the state, whose place of residence is known; and to all others, by publishing the substance of the application, with a statement of the time and place at which it is to be made, for three weeks next preceding the time of the application, in some newspaper of general circulation in the county.”
The record of the probate court shows that the plaintiff in error was made a party defendant to the application, and, when the time for making the application was fixed, the court ordered that the defendants be duly notified thereof; and, that an affidavit in due form, was filed, for service by publication upon the plaintiff here, stating that it had no officer or agent upon whom personal service could be made; and also, that notice, in conformity to the statute, was published in accordance with its requirements, in such cases, and due proof of publication made. It further shows, that when the application was made, the court, “after hearing the evidence, being satisfied that.the owners, and those claiming to own said real estate, have been notified according to law, of the time, place and purpose of the application, and that the necessary statutory steps before making the same have been had,” ordered a jury to be drawn, and proceeded with the case.
The averments of the plaintiff’s petition were controverted by the answer. And it appears from the bill of exceptions, that on the trial in the circuit court, the plaintiff offered evidence tending to prove the allegations of its petition, but the court refused to hear any evidence other than the record of the condemnation proceedings. The question is thus raised, whether it was competent, in that collateral proceeding, to contradict the record of the probate court, by showing *291 that the plaintiff in error was a resident corporation, having in this state officers or agents upon whom personal service might have been obtained, and that therefore, it was not legally served by publication.
In Hammond v. Davenport, 16 Ohio St. 177, it was held, that defendants on whom no service of process was had, otherwise than by publication, will not be allowed, in a collateral proceeding, to draw in question the jurisdiction of the court rendering the decree, by proving that at the commencement, and during the pendency of the proceeding, they were residents of the state. And see Callen v. Ellison, 13 Ohio St. 446. And the question here, is, whether that rule is applicable to probate courts in proceedings of the kind we are considering. It seems well settled, that the probate courts of the state are courts of record, competent to decide on their own jurisdiction, and exercise it to final judgment; and that their records import absolute verity. Shroyer v. Richmond, 16 Ohio St. 455. The class of tribunals to which they belong, and the character of their jurisdiction, are aptly pointed out in the opinion of the court in the ease just cited, in the following language: “ True, it (the probate court) is a court of limited jurisdiction, and it is equally true, that the jurisdiction of each of the courts of the state is expressly limited, either by the constitution or by statute. But, as was said in the case of Sheldon v. Newton, 3 Ohio St. 494, ‘ the distinction is not between courts of general and those of limited jurisdiction, but between courts of record, that are' so constituted as to be competent to decide on their own jurisdiction, and to exercise it to a final judgment, without setting forth the facts and evidence on which it is rendered, and whose records, when made, import absolute verity; and those of an inferior grade, whose decisions are not, of themselves, evidence, and whose judgments can be looked through for the facts and evidence which are necessary to sustain them. Orphans’ courts, and courts of probate, when constituted courts of record, have uniformly been held of the former description,’ and the authorities cited in that case fully sustain these positions.”
*292 The statute regulating these appropriation proceedings, expressly confers upon the probate court power to decide when the service is complete, and the parties are in court. Its decision upon those questions cannot, we think, be collaterally inquired into; and the circuit court committed no error in refusing to hear evidence offered for that purpose. Besides, it is shown by the record of the probate court, that the plaintiff in error, at the time and place fixed for making the application as designated in the published notice* filed its motion in that court to dismiss the proceeding and deny the application, for the reason, among others, that the court had no jurisdiction of the subject-matter. The motion was argued by counsel for the parties, and overruled by the court. This effected the appearance, and gave the court jurisdiction of the plaintiff in error. Elliot v. Lawhead, 43 Ohio St. 171.
2. But the claim is made that the probate court had no jurisdiction over the property, because no power has been conferred on municipal corporations to appropriate property owned by a railroad company, for the uses for which the property was sought.
This claim is based upon two propositions: First, that the property was already devoted to a public use, viz., that of the railroad company, and could not be taken for another and different public use, under the general power possessed by the defendant to appropriate real property for such use; and, second, that the express grant of power, by section 2233 of the Revised Statutes, to municipal corporations, to appropriate property owned by a railroad company, for the purpose of opening or extending streets or alleys, under the limitations therein contained, by implication, excludes the power of appropriation of such property, for any other purpose.
If it be true that the defendant was without lawful authority to appropriate the property for the proposed uses, the judgment of the probate court, of course, could confer none. If, on the other hand, the defendant was clothed with the necessary power, the judgment of the court was *293 not open to collateral attack, but could only be reviewed on error, or appeal. In support of the first proposition, it is argued, that the railroad company was the exclusive judge of what lands were necessary for its purposes; and, that the land in question, having been acquired for a depot, and thus devoted to a public use, could not be taken by the defendant for the uses proposed, because the power to so take it, is not expressly granted by the statute, nor necessarily implied from the terms of the grant. The statute, in general language, expressly authorizes any city or village, “ to enter upon and hold real estate within its corporate limits,” for “necessary offices,” and for “prisons.” Revised Statutes, section 2282. No limitation on the power is found in the statute, either with respect to the ownership, or the uses made of the property. Under a statute, which, in equally general language, conferred power upon cities and incorporated villages, to enter upon and take land for the purpose of opening and extending streets and allej's, it was held in L. M. & C. & X. R. R. Co. v. Dayton, 23 Ohio St. 510, that they were authorized to appropriate to those uses, lands which were the subject of the franchises of railroad companies ; provided the second use for which the land was taken was, in the circumstances of the particular case, reasonably consistent with the former use. The court say in that case, that the terms of the grant are “ sufficiently broad, prima facie, to confer the requisite authority, and there is in such case nothing in the nature of the use to which the land has been appropriated bj'- the railroad company, or in that to which it is proposed to subject it bj'- the second appropriation, which requires us, upon the presumed intention of the legislature, to ingraft upon the general terms of the grant an exception which will prohibit such crossing.” According to the rule established by that decision, whether municipal corporations, under the power conferred by section 2232 of the Revised Statutes, can appropriate lands owned by a railroad company, within their limits, for any of the specified uses, must depend upon the circumstances of each case ; the criterion in all cases, being, whether such appropriation is *294 reasonably consistent with the use to which the property has been subjected by the railroad company. And whether it is so consistent, may, in each case, become a question of fact.
Though it is not so shown by the bill of exceptions, it may be supposed that it was to this point the plaintiff, on the trial in the circuit court, offered evidence. The nature of the evidence is not disclosed. And under the pleadings, its precise character is not readily conjectured. The lot is described in the 'deed, referred to in the petition, as “ being 535 feet front on the railroad, and 200 feet back.” That portion of it which the defendant sought to appropriate, is 25 feet by 50 feet in dimensions. And, while it is averred in the petition that a depot building has been erected and is maintained on the lot, it is not alleged that any part of the building is on the portion wanted by the defendant. Nor, is it averred that any of that part of the lot is occupied or used for railroad purposes, or that it is in any way necessary for the use or operation of the plaintiff’s road, or the conduct of its business. The answer alleges, that the depot building is 125 feet distant from that part of the lot embraced in the condemnation proceeding; that on the intervening space, there is, and for years has been, a building occupied for business rooms, in no way connected with the business of the railroad company; and, that the portion of the lot which the defendant was seeking to appropriate, has never been needed, or used, or occupied for any railroad purpose, and never will be by the plaintiff. The plaintiff not having replied, these allegations of the answer stand admitted. Proof in their stipport was unnecessary, and proof against them inadmissible. It is not suggested that the proof offered was for any other purpose.
Was the defendant, under these circumstances, destitute of power to appropriate the property so conditioned? It may be true, that a railroad corporation is, in the first instance, the exclusive judge of what lands are necessary for its purposes, and of the quantity of land so needed; and that it may acquire the same by condemnation. But the rightful exercise of its power of eminent domain, is limited *295 to the appropriation of such lands as are reasonably necessary for its legitimate uses. Whatever, beyond that, is so acquired, must result from erroneous judgment, or a wilful abuse of the power. What reason can there be for exempting such excess, when not employed, nor in any way reasonbly necessary, in the proper exercise of its corporate franchises, from appropriation for a needed public use ? There appears to be none. The power of eminent domain, is the right to make private property “ subservient to the public welfare,” without the owner’s consent. It resides in the sovereign, and rests upon public necessity. And though it may be delegated to, or exercised through instrumentalities like corporations, it can never be rightfully exercised beyond the public necessity. Giesey v. R. R. Co., 4 Ohio St. 308. All property, however held, is necessarily subject to the legitimate exercise of the power. It seems to be a well established rule, however, that property already appropriated, in the proper exercise of the power of eminent domain, cannot be taken for another public use which will wholly defeat or supersede the former use, unless the power to make such second appropriation be given expressly or by necessary implication. Railroad Company v. Dayton, supra. But land held by a corporation, whether acquired by purchase or appropriation, which is not employed in, nor needed for the proper exercise of its corporate franchises, is not within the reason or operation of the rule. The admissions of the pleadings, in the case before us, show that the property appropriated by defendant for the purpose of .the municipality, was of this character, and it was, therefore, we think, the proper subject of such appropriation.
The provision contained in section 2233, of the Revised Statutes, relating to the opening and extending of streets and alleys across railroad tracks, and lands held or owned by railroad companies, first became a part of the legislation of this state, by the passage of the act of April 28, 1873. That act did not contain the clause, limiting the appropriation for such purposes, to cases “ where such appropriation will not unnecessarily interfere with the reasonable use of such *296 road, or land, by the railway company.” The original act, with this clause added, was carried into the Revised Statutes, as the section above named. Before the enactment of the statute, the case of the Railroad Company v. Dayton, supra; had been decided; by which it was established, that under a general power, like that granted by section 2232, municipal corporations were authorized to appropriate property held or owned by railroad companies, under substantially the same conditions now embodied in section 2233. This latter section did not, therefore, confer the power to appropriate railroad property. It was not necessary for that purpose. The power existed before that statute was enacted, and independently of it. The statute is, therefore, simply declaratory of what the law was at the time of its adoption, and was not designed to exclude the power then possessed by municipal corporations under the general grant.
Hence, we conclude,.that municipal corporations, under the power conferred by section 2232, of the Revised Statutes, are authorized to appropriate, for necessary public offices, or a prison, land of a railroad company, which is not needed or used in the operation of its road, or the conduct of its business ; and that the probate court had complete jurisdiction in the appropriation proceeding instituted bythe defendant, .and the plaintiff is concluded by its judgment.

The judgment of the circuit-court is affirmed.